UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | **CRIMINAL ACTION NO. 7:18-CR-7-KKC** |
| Plaintiff, | |
| V. | **OPINION AND ORDER** |
| **ASSAD NASR,** | |
| Defendant. | |

\* \* \* \* \* \* \*

This matter is before the Court on Defendant Assad Nasr's motion (DE 33) requesting that the Court dismiss the indictment. In support of his motion, Nasr argues that the indictment is the result of a "selective" and "vindictive" prosecution. In the alternative, Nasr ask the Court to permit him to engage in discovery on the issue of selective and vindictive prosecution. He also asks that the Court conduct an evidentiary hearing after the parties have completed discovery.

Nasr is a pharmacist and, during the relevant time period, was the owner of Kentuckiana Pharmacy, which is in Jeffersonville, Indiana. He is charged with one count of conspiring with others to dispense oxycodone outside the scope of professional practice and not for a legitimate medical purpose.

As to Nasr's argument that this prosecutor is acting vindictively, "[a] prosecutor vindictively prosecutes a person when he or she acts to deter the exercise of a protected right by the person prosecuted." *United States v. Anderson*, 923 F.2d 450, 453 (6th Cir. 1991). Generally, the government retains broad discretion in determining whom to prosecute and

what charges to bring. *Wayte v. United States*, 470 U.S. 598, 607–08 (1985). But there are limits to this discretion. The Due Process Clause of the Fifth Amendment prohibits the government from prosecuting a defendant to punish him for exercising a legally protected statutory or constitutional right. *United States v. Goodwin*, 457 U.S. 368, 372 (1982); *United States v. LaDeau*, 734 F.3d 561, 566 (6th Cir. 2013).

A defendant can establish that a prosecution is vindictive in one of two ways. "First, a defendant may demonstrate 'actual vindictiveness,' *i.e.* he may establish through objective evidence that a prosecutor acted in order to punish the defendant for standing on his legal rights." *Bragan v. Poindexter,* 249 F.3d 476, 48 (6th Cir. 2001). Nasr does not purport to have such objective evidence of vindictiveness.

The second way of proving a vindictive prosecution is by demonstrating a "a realistic likelihood of vindictiveness." *Id.* A defendant may establish a reasonable likelihood of vindictiveness with evidence that "(1) the prosecutor has 'some stake' in deterring the petitioner's exercise of his rights and (2) the prosecutor's conduct was somehow 'unreasonable.'" *Id.* (quoting *Anderson*, 923 F.2d at 453-54). The trial court must conduct an evidentiary hearing on the motives of the government where the defendant has made a *prima facie* showing that there is a "realistic likelihood of vindictiveness." *United States v. Adams*, 870 F.2d 1140, 1146 (6th Cir.1989). And the defendant may be entitled to discovery on the issue if he presents "some evidence tending to show the existence" of the two essential elements of the defense. *Id.*

At the hearing, the burden then shifts to the government to disprove that vindictiveness motivated the prosecution. *Bragan*, 248 F.3d at 482. The presumption of vindictiveness "safeguards a defendant's due process rights by eliminating apprehension of prosecutorial retaliation where circumstances reasonably indicate retaliation, even if there

is no direct evidence that the prosecutor was in fact improperly motivated." *LaDeau*, 734 F.3d at 566. If the government rebuts the presumption of vindictiveness, "the defendant must prove that the offered justification is pretextual and that actual vindictiveness has occurred." *Bragan*, 249 F.3d at 482.

Nasr argues that the government sought to deter him from exercising his right to assert a claim to $60,728 that the government seized from the pharmacy's bank account. Kentuckiana filed a claim for the funds on or about December 26, 2017. The government filed the indictment of Nasr on May 24, 2018.

Prosecutors have been deemed to have a personal stake in deterring the defendant from exercising his First Amendment rights where the defendant made public statements in print, radio, television, a published book; and speaking engagements that "were highly critical of the prosecutors" and included "serious allegations against the prosecutors" while a disciplinary charge was pending against the prosecutors. *Bragan*, 249 F.3d 476, 483 (6th Cir. 2001). And the Supreme Court has determined that a prosecutor "clearly has a considerable stake" in discouraging defendants from appealing "since such an appeal will clearly require increased expenditures of prosecutorial resources before the defendant's conviction becomes final, and may even result in a formerly convicted defendant's going free." *Blackledge v. Perry*, 417 U.S. 21, 27 (1974).

Similarly, the Supreme Court has recognized that prosecutors have a stake in deterring a defendant from exercising a procedural right that causes a compete retrial after they have been convicted. *Goodwin*, 457 U.S. at 376. That stake may motivate a vindictive prosecution because there is an "institutional bias inherent in the judicial system against the retrial of issues that have already been decided." *Id*.

Nasr cites *LaDeau*. In that case, the Sixth Circuit determined that the prosecutor had a stake in deterring the defendant from filing a motion to suppress that was "neither routine nor typical"; the motion "eviscerated" the prosecutors' case and required them to restart the prosecution "from scratch." 734 F.3d at 569. The defendant's motion in that case "did not inflict merely 'some' incidental burden on the government's ability to prove its case; it inflicted a mortal blow." *Id*.

Nasr has pointed to no case, and the Court has located no case, holding that a prosecutor has a stake in prohibiting a defendant from filing a claim for seized funds. *See United States v. Ventura*, No. 13-14-KSF, 2013 WL 2452723, at *6 (E.D. Ky. June 5, 2013) ("[T]he Venturas have pointed to no caselaw which indicates that the fact that the Government may recover additional monies alone amounts to a sufficient 'stake' to constitute a 'reasonable likelihood of vindictiveness.'")

A claim for seized funds is akin to a routine pretrial motion, and prosecutors are not generally deemed to have a sufficient prosecutorial stake in deterring pretrial motions. This is because such motions are to be expected and are not unduly burdensome. *Goodwin*, 457 U.S. at 381; *LaDeau*, 734 F.3d at 567 (stating "*Goodwin* generally counsels against a finding that a sufficient prosecutorial stake has arisen in the pretrial context.") Unlike even some routine pretrial motions, Nasr's claim to the seized funds, whether successful or not, has no effect at all on the government's criminal case against him. The prosecutor has no stake in deterring such a claim.

But even if the prosecutors should be deemed to have a stake in deterring a claim to seized funds, Nasr has not alleged any unreasonable conduct on the part of the prosecutors. Citing *LaDeau*, Nasr argues that the prosecutors acted unreasonably in indicting him because they had all the information that they needed to indict him in November 2016 when his alleged co-conspirators were indicted. Nasr was not indicted until about 18 months later.

4

In *LaDeau*, the defendant was indicted on one count of *possessing* child pornography. After the court granted his suppression motion, the government obtained a superseding indictment charging the defendant with conspiring to *receive* pornography, which subjected him to a longer prison sentence than the possession charge. There was no question that the conspiracy-to-receive charge was "based on evidence that had been in the government's possession since before the initial indictment." *LeDeau*, 734 F.3d at 564, 568.

Nasr argues that the prosecutors acted similarly unreasonably in asserting the charge against him because nothing substantive occurred in the government's investigation between the November 2016 indictment of his alleged co-conspirators and his indictment about 18 months later. In fact, he argues that the government's investigation of him was complete over a year prior to his indictment. (DE 56, Mem. at 10.)

But Nasr himself explains that the government did not conduct a search of Kentuckiana until May 2017. (DE 56, Mem. at 2.) That search is a major development that transpired between the co-conspirator indictment and Nasr's indictment. It is eminently reasonable that Nasr's indictment did not come until after the search of Kentuckiana.

Because Nasr has failed to establish a prima facie case of vindictive prosecution, the Court need not conduct a hearing on the issue. Nor has Nasr presented sufficient evidence on this issue to warrant discovery.

Nasr also argues that the indictment must be dismissed because the prosecutors "selectively" prosecuted him because of his dark skin, Muslim religion, and foreign birth. Just as a prosecutor cannot vindictively prosecute a defendant, it is unconstitutional for a prosecutor to decide whether to prosecute an individual "based on an unjustifiable standard such as race, religion, or other arbitrary classification." *United States v. Armstrong*, 517 U.S. 456, 464 (1996) (quotations and citation omitted).

5

To prevail on a selective prosecution claim, a defendant must show that the federal prosecutorial policy had both a discriminatory purpose and a discriminatory effect. *Id*. at 465. "As for the purpose requirement, a defendant 'must prove that the decisionmakers in *his* case acted with discriminatory purpose.'" *United States v. Merriweather*, 728 F. App'x 498, 508 (6th Cir.), *cert. denied*, 139 S. Ct. 192 (2018) (quoting *McCleskey v. Kemp*, 481 U.S. 279, 292 (1987)). "To satisfy the effect element, a defendant 'must show that similarly situated individuals of a different race were not prosecuted.'" *Id*. (quoting *Armstrong*, 517 U.S. at 465.)

Because selective prosecution claims "invade a special province of the Executive – its prosecutorial discretion – [the Supreme Court has] emphasized that the standard for proving them is particularly demanding, requiring a criminal defendant to introduce 'clear evidence' displacing the presumption that a prosecutor has acted lawfully." *Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 497 (1999) (quoting *Armstrong*, 517 U.S. at 456.). This "high bar" recognizes that "courts are poorly positioned to second-guess the decision whether and whom to prosecute." *Merriweather*, 728 F. App'x at 508. To rebut the presumption that a prosecutor has acted properly, the defendant must present "clear evidence to the contrary." *Armstrong*, 517 U.S. at 464.

Before granting discovery on a selective-prosecution claim, the Court must first assess the strength of the claim because such discovery risks diverting prosecutors' resources and disclosing prosecution strategy. *Merriweather*, 728 F. App'x at 508 (quoting *Armstrong*, 517 U.S. at 468). Thus, a defendant asserting such a claim must make a "credible showing" of both discriminatory effect and discriminatory intent before the court grants discovery. *Id*. (quoting *Armstrong*, 517 U.S. at 468.) If the defendant makes this showing and discovery is ordered, then "the Government must assemble from its own files documents which might corroborate or refute the defendant's claim." *Armstrong*, 517 U.S. at 470.

Nasr has pointed to no evidence that the prosecutors in this case acted with a discriminatory purpose when they chose to prosecute him. He concedes this, but he argues that the Court should nonetheless permit him discovery on the issue because he is able to make a strong showing of discriminatory effect.

In support of this argument Nasr cites *United States v. Jones*, 159 F.3d 969 (6th Cir. 1998). In that case, however, the Sixth Circuit found the defendant had presented credible evidence of both discriminatory purpose and effect. The court found that the conduct of the arresting police officers "was not only outrageous and unprofessional, but also racially motivated." *Id.* at 977. Likewise, the court found that the defendant had "set forth some evidence tending to show the existence of discriminatory effect," namely the law enforcement officers referred only the African-American defendant and his co-defendant for federal prosecution but failed to refer for federal prosecution eight non-African-Americans who were also arrested for crack cocaine. *Id.* at 978 (internal quotations deleted). It was only after making both of those findings that the court determined that the defendant was entitled to discovery on his selective prosecution claim. *Id.*

It is true that in *United States v. Thorpe*, 471 F.3d 652 (6th Cir. 2006) the Sixth Circuit cited approvingly to a decision by the District Court of Massachusetts, which states, "A discriminatory effect which is severe enough can provide sufficient evidence of discriminatory purpose." *Id.* at 661 (quoting *United States v. Tuitt*, 68 F. Supp. 2d 4, 10 (D. Mass. 1999)). Nevertheless, the Sixth Circuit also cautioned, "such a finding remains the exceedingly rare exception to the general rule." *Id.* at 661. The court noted that the Supreme Court had found the exception applicable in only a "handful of occasions." *Id.* "Most notable" were the cases of *Yick Wo v. Hopkins*, 118 U.S. 356 (1886), and, about 75 years later, *Gomillion v. Lightfoot*, 364 U.S. 339 (1960).

7

In *Yick Wo*, the plaintiff presented statistics demonstrating that the City of San Francisco had applied an ordinance prohibiting the operation of laundries in wooden buildings against Chinese nationals only. In *Gomillion*, the Alabama legislature's decision to alter the boundaries of the city of Tuskegee – "from a square to an uncouth twenty-eight-sided figure" – had excluded from the city all but 4 or 5 of its 400 potential black voters while not excluding a single white voter. *Gomillion*, 364 U.S. at 340-41.

Nasr does not make a similar showing of discriminatory effect here. Nasr points only to Marla Carroll, who he states worked for him at Kentuckiana and who is apparently American and white. Nasr argues that Carroll was not prosecuted even though she filled 40 prescriptions for controlled substances for the alleged co-conspirators.

Even assuming that Carroll is "similarly situated" to Nasr, that single case is not sufficient evidence of discriminatory effect to lead to the "irresistible" conclusion, "tantamount for all practical purposes to a mathematical demonstration," that the prosecutors in this case are motivated by discriminatory intent. *Thorpe*, 471 F.3d at 662 (quoting *Gomillion*, 364 U.S. at 341).

Further, there is an important distinction between Carroll and Nasr: Nasr owned the pharmacy. There is no evidence before the Court that Carroll did. The Court recently presided over a similar case prosecuted by the same Assistant U.S. Attorney who is prosecuting Nasr. In that case also, the owner of the pharmacy was charged with illegal distribution of controlled substances, but none of his pharmacist employees were. The defendant charged in that case was a white American male. *See United States v. Jackson Noel*, No. 7:18-CR-2 (E.D. Ky. filed Feb. 22, 2018).

Because Nasr has not made a credible showing of discriminatory intent or effect, he is not entitled to discovery on the issue of selective prosecution. Nor is a hearing on the issue necessary.

For all these reasons, the Court hereby ORDERS that Nasr's motion to dismiss the indictment for vindictive and selective prosecution (DE 33) is DENIED.

Dated January 17, 2020

KAREN K. CALDWELL
UNITED STATES DISTRICT JUDGE
EASTERN DISTRICT OF KENTUCKY