UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION -- PIKEVILLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>   **Plaintiff,**<br><br>v.<br><br>ASSAD NASR,<br>   **Defendant.** | CRIMINAL ACTION NO. 7:18-7-KKC<br><br><br>**ORDER AND OPINION** |

*** *** ***

This matter is before the Court on the following motions by Defendant Assad Nasr: (1) a motion in *limine* to exclude references to the "opioid epidemic" (DE 81); (2) a motion *in limine* to exclude evidence about "red flags" (DE 82); (3) a motion to unseal two sentencing hearing transcripts (DE 83); and (4) a motion *in limine* to exclude opinion testimony from law enforcement officers (DE 93). For the following reasons, the Court reserves ruling on Defendant's motion to exclude references to the "opioid epidemic." The Court also grants in part and denies in part Defendant's motions *in limine*.

   I.   **Background**

On May 24, 2018, the Government indicted Defendant Assad Nasr under 21 U.S.C. § 846 for conspiracy to violate 21 U.S.C. § 841(a)(1) by knowingly and intentionally dispensing and distributing oxycodone outside the scope of professional practice and not for a legitimate purpose. (DE 1 at 1.) Defendant allegedly committed this offense in his role as a pharmacist and the owner of Wyoming Pharmacy, LLC. (DE 1 at 2.)

   II.  **Motion to Exclude References to the Opioid Epidemic**

Defendant moves to exclude evidence of, argument about, and references to the "opioid epidemic" because is irrelevant and inadmissible pursuant to Federal Rules of Evidence 401

1

and 402. (DE 81 at 2-3.) Defendant argues that under Federal Rule of Evidence 403, references to the opioid epidemic are inflammatory, prejudicial, wasteful, and confusing. (DE 81 at 1-3.) According to Defendant, such references would imply to the jury that "because Dr. Nasr is alleged to have dispensed opioid medication without a legitimate medical purpose and outside the usual course of professional practice, the public controversy associated with opioid use also should be attributed to him." (DE 81 at 1-2.) Therefore, Defendant contends, references to the opioid epidemic only serve to imply that Defendant is "guilty-by-association" and that convicting him would address societal issues related to opioid use. (DE 81 at 2.) Lastly, Defendant argues that allowing references to the opioid epidemic would be time-consuming, as he would be entitled to respond to the references. (DE 81 at 3.)

The Government does not intend to introduce evidence of the opioid epidemic as part of its case-in-chief or to directly argue that Defendant has contributed to the opioid epidemic. (DE 92 at 3-4.) The Government objects to the motion to the extent that the motion seeks to exclude references to the opioid epidemic by expert witnesses as the references may relate to the experts' training and experience. (DE 92 at 3-4.) However, the Government requests that the Court withhold from ruling on Defendant's motion until the Government and the Court know what specific defenses Defendant will raise at trial. (DE 92 at 4-5.) Because the Government must prove Defendant's knowledge as part of the charged offense, the Government contends that references to the opioid epidemic may become relevant if Defendant argues that he lacked knowledge that he was filling prescriptions for customers involved in the diversion of opioids. (DE 92 at 4-5.)

Therefore, the Court reserves ruling on this motion until the Court can determine the relevancy of opioid epidemic-related evidence, depending on the specific defenses that Defendant raises at trial.

### III. Motion to Exclude Red Flags Evidence

Defendant moves to exclude evidence that Defendant ignored red flags in filling certain suspicious prescriptions for controlled substances. (DE 82 at 1.) Defendant first argues that this testimony is unconstitutionally vague pursuant to the Fifth Amendment's "void-for-vagueness" doctrine. (DE 82 at 1.) According to Defendant, "the term 'red-flags' [sic] fails to provide the constitutionally required notice to [Defendant] in direct violation of his rights," and the allegations do not amount to "reasonably clearly criminal" conduct under 21 U.S.C. § 841(a)(1). (DE 82 at 3.) Defendant also contends that the Government's interpretation that red flags constitute a violation of § 841(a)(1) is overbroad and would criminalize otherwise legal conduct. (*See* DE 82 at 7-8.)

Defendant's "void-for-vagueness" argument is inapplicable. "[T]he void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Beckles v. United States*, 137 S. Ct. 886, 892 (2017). Here, Defendant's motion relates to the exclusion of evidence that Defendant ignored red flags in filling suspicious prescriptions instead of the constitutionality of the statute under which Defendant is charged. And, as discussed further below, this Circuit has accepted red flags testimony as a proper method for proving knowledge in illegal drug distribution cases involving pharmacists.

Defendant further contends that red flags evidence is unfairly prejudicial and confusing under Federal Rule of Evidence 403 because the Government will focus on the similarities between the red flags that Defendant ignored and those that his alleged co-conspirator, Dr. Joel Smithers, ignored. (DE 82 at 10.) The Government responds that it must prove Defendant's knowledge as an element of the charged offense. (DE 94 at 3.) Therefore, the Government argues that evidence that Defendant deliberately ignored red

3

flags is relevant under Federal Rule of Evidence 401 to establish Defendant's knowledge. (DE 94 at 6-7). Further, the Government cites to case law where courts have accepted red flags evidence as a means of proof in diversion cases. (DE 94 at 4-5.)

Unless otherwise prohibited, relevant evidence is admissible. Fed. R. Evid. 402. "Evidence is relevant if (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. Even if evidence is relevant, the court may still exclude it "if its probative value is substantially outweighed by a danger of" unfair prejudice or confusion of the issues. Fed. R. Evid. 403.

Defendant is charged under 21 U.S.C. § 846 with conspiracy to violate 21 U.S.C. § 841(a)(1). (DE 1 at 1.) § 841(a)(1) prohibits a person from "knowingly or intentionally" manufacturing, distributing, or dispensing a controlled substance[.] 21 U.S.C. § 841(a)(1). While certain licensed medical professionals are authorized to prescribe controlled substances, "[a] prescription for a controlled substance to be effective must be issued for a legitimate medical purpose by an individual practitioner acting in the usual course of his professional practice." 21 C.F.R. § 1306.04(a). Therefore, to convict Defendant under § 841(a)(1), the Government must prove that (1) Defendant filled prescriptions that were not issued for a legitimate medical purpose, (2) Defendant acted outside the scope of professional practice, and (3) Defendant did so knowing that the prescriptions were invalid. *See United States v. Jones*, 825 F. App'x 335, 339 (6th Cir. 2020); *United States v. Veal*, 23 F.3d 985, 988 (6th Cir. 1994). The Government may prove Defendant's knowledge by demonstrating Defendant's deliberate ignorance. *See United States v. Mitchell*, 681 F.3d 867, 877 (6th Cir. 2012).

Here, red flags evidence is admissible because it is relevant. Evidence that Defendant ignored red flags in filling suspicious prescription is relevant since the evidence tends to make

4

it more probable that Defendant knew that he was filling prescriptions that did not serve a legitimate medical purpose or deliberately ignored signs indicating that the prescriptions did not serve such a purpose. Whether Defendant knew, or deliberately ignored, that the prescriptions he filled did not serve a legitimate medical purpose is consequential, as the Government must prove Defendant's knowledge or deliberate ignorance as part of its case-in-chief. Additionally, the Sixth Circuit has upheld the use of red flags evidence in similar cases involving pharmacists charged with violations of § 841(1)(a). *See Jones*, 825 F. App'x at 339-40 (upholding conviction based, in part, on red flags testimony); *cf. United States v. Darji*, 609 F. App'x 320, 335-36 (6th Cir. 2015) (allowing willful ignorance instruction based on the Government's evidence that Defendant ignored red flags in distributing hydrocodone), *abrogated on other grounds*.

Further, Rule 403 does not otherwise render the red flags evidence inadmissible. Contrary to Defendant's argument, the Government does not indicate that it intends to compare the red flags Defendant ignored to those his alleged co-conspirator, Dr. Smithers, ignored. Therefore, evidence that Defendant ignored red flags in filling suspicious prescriptions does not create any risk of unfair prejudice or confusion. Even if such risk existed, the risk would not substantially outweigh the highly probative value of the evidence in establishing Defendant's knowledge or deliberate ignorance of the fact that he filled prescriptions that did not serve a legitimate medical purpose.

Finally, Defendant argues that red flags-related testimony would violate Federal Rule of Evidence 701 because the testimony would not be "based on a lay witness's perception of any facts relating to this case." (DE 82 at 9.) Defendant also asserts that this testimony would not be the "product of reliable principles and methods," as Federal Rule of Evidence 702 requires. (DE 82 at 9.)

5

The Government has identified that potential red flags evidence may include the following:

> "the distance traveled by [Defendant's] customers to fill the prescriptions in question, the distance traveled by these same persons to and from the prescribing provider, the prescribing of the same or similar type and number of prescriptions to a number of persons all from the same general area around the same time, the filling of such prescriptions at one time by a single individual paying for multiple other persons, the filling of prescriptions for persons that have never traveled to the pharmacy, [and] requiring cash-only payments for prescription opioids."

(DE 94 at 6.) Rule 701 governs the admissibility of opinion testimony from lay witnesses, while Rule 702 governs the admissibility of opinion testimony from expert witnesses. Fed. R. Evid. 701; Fed. R. Evid. 702. The Government has not specified the form in which it will present red flags evidence or whether witnesses providing red flags testimony will act as lay or expert witnesses. Accordingly, at this time, the Court cannot find that red flags testimony would violate Rules 701 or 702. If that red flags evidence later creates admissibility issues pursuant to Rules 701 and 702, Defendant may raise objections at trial.

Thus, because evidence that Defendant ignored red flags in filling suspicious prescriptions is admissible, Defendant's motion to exclude red flags evidence is denied.[1]

### IV.     Motion to Unseal Sentencing Hearing Transcripts

Defendant also moves to unseal and receive copies of the transcripts of the sentencing hearings for two anticipated Government witnesses, Laura Kicklighter and Darryl Williams. (DE 83 at 1.) The Court sentenced Kicklighter and Williams in connection with the same conspiracy for which Defendant is charged. (DE 83 at 2.) Certain portions of these transcripts were filed under seal. *United States v. Kicklighter*, No. 7:16-cr-15-KKC-EBA-2, DE 288; *United States v. Williams*, No. 7:16-cr-15-1-KKC-EBA-1, DE 290. Defendant

---

[1] In his motion, Defendant also claims that admission of red flags evidence violates the Confrontation Clause and Federal Rules of Evidence 404, 602, 704, and 802. (*See* DE 82 at 1.) Defendant does not provide any further support for these claims. Therefore, the Court will not address those arguments.

requests access to the unsealed portions of these transcripts to exercise his right to cross-examine these witnesses under the Constitution's Confrontation Clause. (DE 83 at 2.)

Defendant argues that the need to keep the transcripts under seal no longer exists because the Court has already sentenced Kicklighter and Williams for their involvement in the conspiracy. (DE 83 at 3.) Further, because both witnesses have testified in trials for two other alleged co-conspirators, Defendant asserts that Kicklighter and Williams have already revealed their roles as government witnesses. (DE 83 at 3.) Defendant contends that the Court would not compromise the confidentiality of the Government's investigation into the witnesses by unsealing the transcripts since that investigation is presumably complete. (DE 83 at 3-4.)

The Government does not object to providing portions of the sealed transcripts to Defendant for cross-examination purposes. (DE 91 at 1.) However, the Government argues that transcripts may contain information related to ongoing or pending investigations that could compromise the safety of other individuals and the status of those matters. (DE 91 at 1.) Before turning over the unsealed transcripts to Defendant, the Government requests *ex parte* review and redaction of the transcripts for matters related to ongoing or pending investigations. (DE 91 at 1.)

Accordingly, the Court grants Defendant's motion to unseal the transcripts of the sentencing hearings from the *Kicklighter* and *Williams* cases, pending the *ex parte* review and potential redaction of the transcripts for matters related to ongoing or pending investigations.

### V.     Motion to Exclude Opinion Testimony from Law Enforcement Officers

Lastly, Defendant moves to exclude opinion testimony from law enforcement officers in the following forms: (1) any testimony that is presented as lay opinion but is actually expert opinion subject to the requirements of expert testimony; (2) opinion testimony on

"background information" from cases not before the court; (3) opinion testimony on the law; and (4) expert testimony that requires an expert on the practice of pharmacy. (DE 93 at 1.) Defendant bases his motion on the testimony of a drug task force officer, Richard Dalrymple, in the trial of Defendant's alleged co-conspirator, Jackson Noel. (DE 93 at 1.) Defendant apparently submits this motion to prevent the Government from presenting similar testimony at his trial. The Government concedes that it intends to use Dalrymple in a similar capacity in this case. (DE 97 at 2-3.)

According to Defendant, Dalrymple's testimony violated Federal Rules of Evidence 701 and 702 because Dalrymple provided opinion testimony based on the specialized knowledge that he gained from his law enforcement experience in drug diversion cases, but he was not qualified as an expert. (DE 93 at 2-3.) The Government responds that it does not intend to elicit expert opinion testimony "in the guise of lay witness testimony," and the Government will properly qualify any testimony from Dalrymple. (DE 97 at 3.) The Government also argues that it properly qualified Dalrymple at Noel's trial, and the Court gave a proper instruction regarding Dalrymple's testimony. (DE 97 at 3.)

A lay witness's opinion testimony is only admissible if the opinion is "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of [Federal Rule of Evidence] 702." Fed. R. Evid. 701. A qualified expert witness may provide opinion testimony if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

8

Fed. R. Evid. 702. In determining if an expert witness is qualified, courts must not assess "the qualifications of a witness in the abstract, but whether those qualifications provide a foundation for a witness to answer a specific question." *Berry v. City of Detroit*, 25 F.3d 1342, 1351 (6th Cir. 1994). An expert witness's qualifications must "relate to the subject matter of his proposed testimony." *Smelser v. Norfolk S. Ry. Co.*, 105 F.3d 299, 303 (6th Cir. 1997), *abrogated on other grounds*.

In the Sixth Circuit, "courts have overwhelmingly found police officers' expert testimony admissible where it will aid the jury's understanding of an area, such as drug dealing, not within the experience of the average juror." *United States v. Lopez-Medina*, 461 F.3d 724, 742 (6th Cir. 2006) (citation, quotation marks, and brackets omitted). In instances where a police officer testifies as both a fact witness and an expert witness, courts should accordingly instruct the jury regarding that officer's dual roles. *Id.* at 743.

Here, assuming that the Government properly qualifies Dalrymple, Dalrymple's anticipated expert testimony is admissible to the extent that the testimony aids the jury's understanding of the innerworkings of prescription drug diversion, which is outside the experience of the average juror. Thus, the Court denies Defendant's motion *in limine* to preclude Dalrymple's opinion testimony on this basis. Should any objections arise regarding Dalrymple's qualifications as an expert or the nature of Dalrymple's opinion testimony at trial, Defendant may raise them at that time. If Dalrymple testifies as both a fact witness and an expert witness, the Court will also instruct the jury regarding Dalrymple's dual roles as a witness.

Defendant also argues that Dalrymple's testimony regarding drug trafficking at other pharmacies was irrelevant and prejudicial. (DE 93 at 3-4.) The Government responds that the testimony that Defendant references "relates directly to the relevant background and

experience of the witness that allows him to provide opinion/expert testimony on the matter in question – specifically, his knowledge gained through multiple prior investigations of the diversion of prescription drugs in the context of 'pill mills.'" (DE 97 at 3-4.)

Defendant mischaracterizes this portion of Dalrymple's testimony. Dalrymple described the "common means or methods" used in diverting drugs with which he is familiar "through [his] training and experience." *United States v. Noel*, No. 7:18-cr-2-KKC, DE 149 at 25:24-25. In testifying about these methods, Dalrymple referenced pill mills:

> A pill mill is a term we use for a clinic. Like in the late 2005 to 2012 [sic], we saw a lot of pill mills in the South Florida area. I'm sure everybody's seen it on TV. . . And they would send eight to 10 people at a time to one doctor, they get that prescription, they come back, they would have to find a pharmacy that would fill it.

*Noel*, No. 7:18-cr-2-KKC, DE 149 at 26:21-27:21. Dalrymple simply testified about the specialized knowledge that he had regarding prescription drug diversion that would permit him to testify about prescription drug diversion as an expert under Rule 702. Further, Defendant's testimony "provide[d] a foundation" for him to answer questions about prescription drug diversion, *see Berry* 25 F.3d at 1351, and "relate[d] to the subject matter" of prescription drug diversion, *see Smelser*, 105 F.3d at 303. Thus, the Court denies Defendant's motion insofar as that motion requests to exclude testimony about prescription drug diversion at other pharmacies that establishes Dalrymple's qualification as an expert.

Defendant additionally claims that Dalrymple gave an impermissible legal opinion by interpreting an element of the offense for which Noel was charged. (DE 93 at 4.) The relevant portion of testimony is as follows:

> Q. Are you familiar with the Code of Federal Regulations?
> 
> A. I am.
> 
> Q. And are you familiar with the provisions that pertain to pharmacists?
> 
> A. Yes.

10

> Q. Have you ever looked at or do you know the meaning of the term corresponding duty?
>
> A. Corresponding responsibility?
>
> Q. Yes.
>
> A. That's how it's termed in the manual, yes, sir.
>
> Q. What does that mean?
>
> A. Well, basically the way the CFR defines it and the way the Controlled Substances Act defines it also is, for a prescription to be legitimate, it has to be issued by a medical practitioner that is qualified to write it, in the usual course of practice for a legitimate medical purpose. Those three elements have to exist. And the practitioner that writes the prescription has a duty to write it for those reasons. But what the federal regulation also states is that the pharmacist has a responsibility to ensure that he or she is filling prescriptions that are written by a practitioner for legitimate medical purpose in the usual course of practice.

*Noel*, No. 7:18-cr-2-KKC, DE 149 at 29:12-30:8.

The Government responds that it "is not aware of any authority that would preclude its witness from testifying as to his or her understanding of the applicable standards and procedures a health care provider and/or pharmacist must follow in carrying out their duties." (DE 97 at 4.) Yet while the witness may reference the regulations that govern a pharmacist's practices, "[i]t is the responsibility of the court, not testifying witnesses, to define legal terms." *Berry*, 25 F.3d at 1353. Thus, the Court grants Defendant's motion as it relates to excluding expert testimony from law enforcement officers that attempts to define legal terminology or provide legal opinions.

Finally, Defendant maintains that Dalrymple gave expert opinion testimony reserved for a pharmacist when he testified about the red flags that a pharmacy may observe in filling prescriptions (DE 93 at 5-6), and presumably, he moves to exclude such testimony here. The Government argues that "this motion is premature." (DE 97 at 5.) The Court agrees with

the Government—as discussed *supra*, the Government has not specified the form in which it will present red flags evidence or whether witnesses providing red flags testimony will act as lay or expert witnesses. Therefore, the Court will not grant Defendant's motion on the ground that red flags testimony is reserved for pharmacists.

## VI. Conclusion

The Court hereby ORDERS as follows:

1. The Court RESERVES RULING on Defendant Assad Nasr's motion *in limine* to exclude references to the opioid epidemic (DE 81);

2. Defendant's motion *in limine* to exclude red flags evidence (DE 82) is DENIED;

3. Defendant's motion to unseal sentencing hearing transcripts (DE 83) is GRANTED, pending review and redaction of the transcripts *ex parte*; and

4. Defendant's motion *in limine* to exclude opinion testimony from law enforcement officers (DE 93) is DENIED to the extent that motion requests a blanket exclusion of all such opinion testimony. The motion is GRANTED to the extent it seeks to preclude law enforcement officers from giving legal opinions.

Dated February 05, 2021

KAREN K. CALDWELL
UNITED STATES DISTRICT JUDGE
EASTERN DISTRICT OF KENTUCKY